(October 9, 1911.)

ELIZABETH A. FROST and BYRON FROST, Her Husband, Appellants, v. JAMES M. HARBERT, Respondent.

[118 Pac. 1095.]

PROMISSORY NOTE—GUARANTY—RELEASE OF PRINCIPAL.

(Syllabus by the court.)

1. A contract of guaranty, whereby the guarantor agrees that a note is perfectly good and will be paid by the maker as it becomes due, is a separate obligation of the guarantor, and becomes absolute upon the default of the maker of such note.

2. Where a person guarantees the payment of a promissory note, and there is default in the payment of such note by the principal debtor, and by reason thereof the contract of guaranty becomes absolute, the guarantor will not be released from his liability as such by reason of an agreement made by the creditor, the principal debtor and the guarantor that certain personal property covered by a mortgage securing the note be sold and applied on the note, and that the original debtor be released from such debt.

3. Rev. Codes, sec. 3577, does not apply to a case where there is default in the payment of a note by the original debtor, and by reason thereof the guarantor's liability becomes absolute, as in such case the default of the payment of the note by the original debtor makes the obligation of the guarantor absolute, and upon such default the guarantor was no longer secondarily liable. The statute refers to discharges of persons secondarily liable on the instrument guaranteed, and not to persons whose contract of guaranty has become absolute by reason of default.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Fremont Wood, Judge.

An action upon a guaranty of the payment of a promissory note. Judgment for defendant. Plaintiff appeals. *Reversed.*

Wyman & Wyman, and Perky & Crow, for Respondent.

A release of the principal debtor by the guarantee will also release the guarantor. In such case the debt is extinguished, and where there is no debt there is nothing on which to hold the guarantor. (*Irons v. Manufacturers' Nat. Bank,* 36 Fed. 843; *Glassel v. Coleman,* 94 Cal. 260, 29 Pac. 508; *Brown v. Ayer,* 24 Ga. 288; *Jamieson v. Holm,* 69 Ill. App. 119; *Tillotson v. Herrick,* 66 Ill. App. 660; *Plano Mfg. Co. v. Parmeter,* 41 Ill. App. 635; *Stull v. Davidson,* 12 Bush (Ky.), 167; *Farmers' etc. Bank v. Kingsley,* 2 Doug. (Mich.) 379; *Kingsbury v. Williams,* 53 Barb. (N. Y.) 142.)

"The guarantor is discharged by a release of his principal as effectually as he would be by payment." (2 Daniel's Neg. Instruments, 5th ed., sec. 1789.)

The annulling of the principal obligation necessarily induces the annullity of the accessory. Without a principal there can be no accessory. (*Bernd v. Lynes,* 71 Conn. 733, 43 Atl. 189.)

The voluntary release of the principal debtor by the guarantee will also release the guarantor. (20 Cyc., p. 1397; 14 Am. & Eng. Ency. of Law, 1162; *Smethurst v. Woolston,* 5 Watts & S. (Pa.) 106; *Evans v. Raper,* 74 N. C. 639; *Ames v. McClay,* 14 Iowa, 281; *Farmers & Mechanics' Bank v. Kingsley,* 2 Doug. (Mich.) 379; *Penn. T. Co. v. McElroy,* 112 Fed. 509, 50 C. C. A. 371; *Kilbride v. Moss,* 113 Cal. 432, 54 Am. St. 361, 45 Pac. 812.)

The obligation of the surety is primary; that of the guarantor is secondary. (20 Cyc. 400, and cases cited.)

Rice, Thompson & Buckner, and Martin & Martin, for Appellants.

"*Volenti non fit injuria* is a maxim of law and it applies where the sureties consent to the indulgence. Then they are parties to it and are not discharged." (Daniel's Neg. Instruments, sec. 1321; Brandt, Suretyship and Guaranty, sec. 368, 369; Huffcut, Neg. Instruments, p. 595; *Adams v. Way,* 32 Conn. 160; 20 Cyc. 1477-F.)

"It is, of course, competent for a guarantor to consent to any change of a contract, and such change does not release him." (14 Am. & Eng. Ency. of Law, p. 1162, and cases cited; *Jordan v. Walters* (Iowa), 80 N. W. 530; *Pimental v. Marques,* 109 Cal. 406, 42 Pac. 159; Brandt, Suretyship and Guaranty, secs. 379, 416; *Osgood v. Miller,* 67 Me. 174; Edwards, Bills and Notes, sec. 776; *Wright v. Storrs,* 6 Bosw. (19 N. Y. Sup. Ct.) 600; *Knoebel v. Kircher,* 33 Ill. 308; *Brown v. Abbott,* 110 Ill. 162; *Pacific Press Co. v. Loofbourow,* 129 Cal. 24, 61 Pac. 944; *Harvey v. First National Bank,* 56 Neb. 320, 76 N. W. 870.)

STEWART, C. J.—In May, 1907, the defendant Harbert purchased from the plaintiffs a certain tract of land, and as part of the purchase price for said land transferred and delivered to the plaintiffs a promissory note executed by Charles Beam to defendant Harbert, and at the time of said transfer and delivery the defendant orally represented and stated to the plaintiffs that said note was perfectly good, and would be paid by said maker as it became due, and that by reason of their relying upon said statements made by the defendant to the plaintiffs, the plaintiffs then and there accepted said note as part payment for the land sold by plaintiffs to said Harbert. This note was dated March 23, 1907, and was for the sum of $2,400, and was secured by a chattel mortgage upon certain personal property, and was payable in monthly instalments of not less than $100 on or before the 10th day of each month. The defendant at the same time transferred and delivered to the plaintiffs as collateral security notes aggre-

gating $1,000, which were also secured by chattel mortgage, and were executed by one J. H. Crowell to one J. C. Beam, and indorsed by J. C. Beam and delivered to the defendant as collateral security for the Charles Beam note; that on the 10th day of June, 1907, when the monthly instalment was due, the plaintiffs presented the note of Charles Beam to him for payment, and demanded the payment of the instalment, and Beam refused payment and plaintiffs notified the defendant of the nonpayment of the instalment; that thereafter, and on June 20, 1907, the plaintiffs and the defendant together agreed with the said Charles Beam that the title to the property described in the chattel mortgage securing the note should be transferred to John C. Rice, attorney for the plaintiffs, and in consideration thereof the plaintiffs and defendant released the said Beam from all personal obligation on account of the said note; thereafter, and in accordance with the agreement, John C. Rice sold and disposed of the mortgaged property, and after paying the expenses of such sale and disposition applied the proceeds of the property on the note, amounting to the sum of $608.25; and that there was also applied on the Beam note the sum of $59.35, an amount paid on the Crowell notes. This action is brought against the defendant to recover the balance due upon the Beam note.

The cause was tried to the court and findings of fact and conclusions of law were made and judgment rendered for the defendant. In the findings of fact the court found the making and delivery of the Beam note as above stated, and the making of the agreement of guaranty to the effect that said defendant orally represented and stated to the plaintiffs that said note was perfectly good and would be paid by said maker as it became due, and that by reason of their relying upon said statement made by the defendant to the plaintiffs, the plaintiffs then and there accepted said note as part payment for the land transferred; and the failure of Beam to pay the instalment due thereon in June, 1907, and the notification of the defendant of the nonpayment of said instalment, and that the whole amount of said note became due, and that "on the 20th day of June, 1907, the plaintiffs and the defendant to-

gether agreed with the said Charles Beam that the title to the property described in the chattel mortgage, securing said note, should be transferred to John C. Rice, attorney for the plaintiffs, and, in consideration thereof, the said plaintiffs and the defendant released the said Beam from all personal obligation on account of said note; that, thereafter, in pursuance of a mutual agreement and understanding between the plaintiffs and the defendant, the said John C. Rice sold and disposed of said property and, after paying the expenses of such sale and disposition, in accordance with the said agreement and understanding, applied the proceeds of said property on said note''; and that there was also applied upon the note the sum of $59.35 realized from the Crowell notes, leaving a balance due of $1,663.59.

As conclusions of law from the facts found the court concludes that the defendant Harbert, by oral representations made to the plaintiffs at the time of assigning and transferring the note of Charles Beam, guaranteed the payment of the said notes to the plaintiffs, and became liable to the plaintiffs for the payment thereof in case it should not be paid when due by the maker thereof; and ''that by reason of the agreement entered into between the plaintiffs and the defendant with the said Charles Beam, as set out in finding 5 herein, on or about the 20th day of June, 1907 (that 'the plaintiffs and the defendant together agreed with the said Charles Beam that the title to the property described in the chattel mortgage securing said note should be transferred to John C. Rice, attorney for the plaintiffs, and, in consideration thereof, the said plaintiffs and the defendant released the said Beam from all personal obligation on account of said note'), the plaintiffs released the defendant from said guarantee of said note and from his obligation to pay said note to the plaintiffs,'' and from these conclusions of law rendered judgment for the defendant. This appeal is from the judgment.

It is the contention of the respondent that the obligation of a surety or guarantor is accessory to that of the principal, and that where there is no principal there can be no surety,

and whatever discharges the principal releases the surety. The general rule thus contended for is perhaps stated as clearly and fully by Edwards' Bills and Notes and Negotiable Instruments, vol. 1, sec. 311, as can be found in the text-books or any opinion, and is as follows:

"The engagement of the surety is accessory to the agreement of the principal; and it is a general rule of law, that whatever discharges the contract of the principal discharges also that of the surety. The good sense and justice of this rule are very manifest. If the principal contract be for the payment of money, or for the performance of a given act, and the money be paid, or the act performed, the undertaking of the surety terminates with the fulfillment of the agreement. Pothier states the principle with great clearness: 'It results from the definition of a surety's engagement, as being accessory to a principal obligation, that the extinction of the principal obligation necessarily induces that of the surety, it being of the nature of an accessory obligation, that it cannot exist without its principal; therefore, whenever the principal is discharged in whatever manner it may be, not only by actual payment or a compensation, but also by a release, the surety is discharged likewise; for the essence of the obligation being that the surety is only obliged on behalf of the principal debtor, he therefore is no longer obliged when there is no longer any principal debtor for whom he is obliged. In like manner the surety is discharged by the novation of the debt; for he can no longer be bound for the first debt for which he was a surety, since it no longer subsists, having been extinguished by the novation; neither can he be bound for the new debt, into which the first has been converted, since this new debt was not the debt to which he acceded."

The authorities upon this subject support this text. (Brandt, Suretyship and Guaranty, vol. 1, sec. 163; 20 Cyc. 397; 14 Am. & Eng. Ency. of Law, 1162; Daniel on Negotiable Instruments, 1789; *Shrader v. Manfs. Nat. Bank,* 133 U. S. 67, 10 Sup. Ct. 238, 33 L. ed. 564; *Bernd v. Lynes,* 71 Conn. 733, 43 Atl. 189.)

Upon this line of argument counsel for respondent urge that inasmuch as the court found as a fact that an agreement was made between the plaintiffs, the principal debtor Charles Beam, and the guarantor, to the effect that the principal debtor should be released from all personal obligation on account of said note, that it therefore followed as a matter of law that the guarantor was also thereby released from his con-tract of guaranty. It must also be conceded that the courts and text-writers treating this subject have always adhered to the rule that the guarantor may consent to changes and altera-tions in the contract without releasing or affecting the lia-bility of the guarantor. None of these cases or text-writers deal with the question of the liability of the guarantor where he agrees to the release of the principal debtor under a state of facts which show that the guarantor entered into an agree-ment with the creditor and principal debtor, after there was a default in the payment by the principal debtor and the obligation of the guarantor has become absolute, and by which a consideration passes from the debtor to the creditor, in con-sideration of which the principal debtor is released from any further liability for such debt. There is clearly a distinction between the cases relied upon by the respondent, and here-tofore cited, and the case at bar. In the case at bar the guar-antor made a contract by which he guaranteed to the plaintiffs that the said note was perfectly good and would be paid by the principal debtor when it became due, and the plaintiffs accepted the note with the guaranty as a valid payment for the sale of certain property sold by the plaintiffs to the guar-antor. At the time the agreement was made, on the 20th day of June, 1907, which released the principal debtor from further liability on said note, default had been made by the principal debtor in the payments due upon the note and de-mand of payment had been made upon the principal debtor, which was refused, and the respondent was notified of such fact, and payment of him was demanded.

In the case of *Miller v. Lewiston Nat. Bank,* 18 Ida. 124, 108 Pac. 901, in dealing with the subject of guaranty of the pay-ment of a promissory note, this court said: "The signers of

this guaranty were under an absolute agreement to see that the maker paid the notes at maturity. The contract of guaranty was absolute and not conditional. If the maker failed to pay the note when due, the contract of guaranty was broken, and the holder of such notes had a right of action against each and all of said guarantors. The holder of such note was under no obligation to pursue the maker or use any diligence whatever to enforce the collection of said note against the maker, or to give notice to the guarantors of the nonpayment of said note," and quotes with approval from the case of *Hungerford v. O'Brien,* 37 Minn. 306, 34 N. W. 161: "The guaranty of 'the payment of the within note' imported an undertaking, without condition, that, in the event of the note not being paid according to its terms,—that is, at maturity,—the guarantor should be responsible. The nonpayment of the note at maturity made absolute the liability of the guarantor, and an action might at once have been maintained against him without notice or demand." So in the present case, at the time the agreement was made on the 20th day of June, 1907, which resulted in the release of Beam from the note, the note had matured and the respondent, as guarantor, became obligated to the appellants upon his guaranty absolutely, and the appellants were not required to pursue the principal debtor any further in the collection of said note, but could resort to the contract of guaranty and enforce the collection against the respondent upon his contract of guaranty. The liability of the guarantor had become absolute before the principal debtor was released, and there was a personal obligation upon the part of the guarantor to pay the note, and the fact that the creditors, appellants, agreed with the guarantor that they would accept said personal property and apply it upon the debt, and by reason thereof release the principal debtor, could in no way injure or prejudice the guarantor. His obligation still existed, and it was a personal obligation by reason of the terms of the guaranty. A case very much in point is that of *Osgood v. Miller,* 67 Me. 174. In that case there was a promissory note executed by James C. Miller to Stephen Osgood

and guaranteed by N. R. Miller and John Miller in the following terms:

"The principal being insolvent and about to take advantage of the bankrupt law, the defendant agreed with the plaintiff in writing that he might 'release the principal maker of the note, James C. Miller, without prejudice to the rights of either party in interest to said note.'"

In discussing the effect such release had upon the liability of the indorsee the court said: "The surety is not discharged by a contract, made with his assent, between the creditor and the principal debtor, although it may operate to extend the time of payment. (*Wright v. Storrs,* 6 Bosw. (N. Y.) 600, 601.) In *Ex parte Harvey, In re Blakely,* 27 Eng. L. & Eq. 272, Turner, L. J., says: 'It is not disputed that a surety, who concurs in an arrangement between the principal and the debtor, is not discharged by such arrangement.' This assent of the surety may be shown by parol. (*Wyke v. Rogers,* 12 Eng. L. & Eq. 162.) The surety is not discharged by the execution by the creditor of a composition deed with his consent. (*Cowper v. Smith,* 4 M. & W. 519.) The consent of the surety to the discharge of the debtor prevents such discharge operating to release the surety. (De Colyar on Guarantees, 403.) A surety by deed guaranteed the payment of a banking current account and agreed that no composition with the principal debtor should discharge his liability. The principal debtor entered into a deed of composition with his creditors, which contained an absolute release of his debts. *Held,* that the surety was not discharged by the release of the principal debtor. (*Union Bank of Manchester v. Beech,* 8 H. & N. 672.)

"The alteration of the note by striking off the name of the principal was done in good faith and intended to be and was in conformity with the agreement signed by the defendant. The sureties agreed in writing to the discharge of the principal, and no other mode being mentioned, the erasure of his name from the note was not an improper mode of doing it. An alteration of a bond without any fraudulent intent will not, it seems, avoid such bond (*Adams v. Frye,* 3 Met. 103);

nor when made merely to correct a mistake. (*Ames v. Colburn*, 11 Gray, 390, [71 Am. Dec. 723].)''

In the case of *Brown v. Abbott*, 110 Ill. 162, in discussing the liability of the guarantor who consents to the release of a trust deed also securing the note guaranteed, the court says:

''It is also insisted, as a matter of law, defendant is discharged from his obligation arising out of his guaranty on the note in suit for another reason,—that is, by retaining the Flanders' note sent to him, plaintiff, tacitly at least, sanctioned the settlement made with Demond, by which it was agreed the trust deed on the Chicago property was released, which defendant was entitled to have stand as indemnity against loss on his guaranty on the note in suit, unless the Flanders' note was received by plaintiff as actual payment of the note in controversy. Two answers may be made to this view of the case: First, it does not appear plaintiff knew any such compromise of the suit against Demond was to be made, until he was informed it had been done; and second, as there is evidence tending to show the compromise of the suit against Demond was made with the knowledge and concurrence of defendant, it will be understood the trial court found such was the fact. That finding was affirmed by the appellate court, which, of course, is conclusive, so far as this court is concerned. Conceding, then, as must be done, the compromise with Demond was made with his consent and approval, the defendant cannot be heard to insist it was done to his injury, and therefore he is discharged from his obligation as guarantor on the note in suit. Where a party consents to the doing of an act, and which would not have been done but for his assent thereto, the person so assenting will not be permitted to make the doing of it a matter of personal advantage.''

In the case of *Wright v. Storrs et al.*, 19 N. Y. Super. Ct. 600, in discussing this question the court says:

''In *Chester v. Bank of Kingston*, 16 N. Y. 338, Mr. Justice Comstock, speaking of the dealing between the creditors and the principal debtor, relied upon as a discharge of the sureties, says, that 'if they did so deal without the assent of

the plaintiffs (the sureties), the latter were, to the amount of the note, discharged in equity, if not in law. If, however, they assented to the dealings, or have placed themselves in a situation where they cannot object, then their liability still remains, unless they have some other answer to it.'

"No authority is cited, but the rules enunciated are stated as being elementary or well-settled law.

"Mr. Theobald states the rule to be, that the surety is not discharged by the creditor's agreeing to give time, if the agreement was authorized or ratified by the surety. (Prin. & Agent [by Theobald], p. 87, sec. 165.)

"In *Ex parte Harvey, In re Blakely* (27 Eng. L. & Eq. 280), Turner, L. J., says: 'It is not disputed that a surety, who concurs in an arrangement between the principal and a creditor, is not discharged by such arrangement.'

"The concurrence or assent of the surety, or his express agreement, if there were one, may be shown by parol. (*Wyke v. Rogers,* 12 Eng. L. & Eq., 162.)

"A knowledge of the arrangement while it is being negotiated, taking part in and encouraging it, or aiding in perfecting it, will justify a finding that the surety assented to it. (*Woodcock v. Oxford and Worcester Railway Co.,* 21 Eng. L. & Eq. 285.)''

At the time respondent entered into the agreement which resulted in the release of the principal debtor, the defendant knew that his obligation of guaranty had become absolute, and he knew that the holders of the note, appellants here, were no longer under any obligation to look to the principal debtor for the payment of said note, and that the release of the principal debtor in no way increased his liability, but, on the contrary, that by making such agreement he was receiving the benefit of having the mortgaged property applied upon the debt which he now was absolutely liable for. Under such circumstances we do not believe that the law will relieve him from the liability arising out of his contract of guaranty. He in no way was misled or injured by the release of the principal debtor, but by the nature of the contract which resulted in such release was benefited, for the expense of fore-

closing the mortgage upon the property turned over was avoided, and the property was disposed of by the trustee as agreed, and the expenses attending the foreclosure were necessarily saved, and the guarantor received as credit upon the debt the value of the property sold.

Counsel for appellant calls the court's attention to Rev. Codes, sec. 3577, and relies upon this section as discharging the guarantor. This statute goes no further than the general rule announced in this opinion and to support which the authorities are cited. That is, "A person secondarily liable on the instrument is discharged: First. By an act which discharges the instrument," and "Fifth. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved." This statute, however, does not apply to the facts of this case, for the same reasons as have been given in this opinion why the general rule announced in the authorities was not applicable to the facts of the case at bar. The statute says: "A person secondarily liable upon an instrument is discharged . . . . ," specifying six different conditions under which such person secondarily liable will be discharged. In the case at bar, however, when there was default in the payment of the note by the maker thereof, the contract of guaranty became absolute, and the guarantor was no longer liable secondarily upon the instrument, and for that reason the statute does not apply to the facts in this case. Had the creditor discharged the debtor before the maturity of the debt, then the guarantor would have been secondarily liable under the statute, but after the debt matured and there was default in its payment, then the guarantor ceased to be secondarily liable, but became absolutely liable for the payment of the debt. The court was in error in concluding that the respondent as guarantor was released from his contract of guaranty by reason of the release of the original debtor.

The judgment is reversed. Costs awarded to appellants.

Ailshie and Sullivan, JJ., concur.

Petition for rehearing denied.