(No. 5355.   April 2, 1930.)

J. C. SANGER, Appellant, v. E. N. FLORY, Respondent.

[286 Pac. 610.]

Turner K. Hackman, for Appellant.

Walters, Parry & Thoman and J. R. Keenan, for Respondent.

BUDGE, J.—About July 3, 1920, the Idaho Automobile & Supply Company sold a truck to one Jones and took in part payment a conditional sale note. Thereafter the company sold the note to appellant. The company and stockholders thereof, including respondent, in writing guaranteed the payment of the note in the following language:

"For value received, we and each and all of the endorsers hereon jointly and severally guarantee payment of the within note, waiving demand of payment, protest and notice of nonpayment."

Jones failed to make payments of the amounts as stipulated in the note. This action was instituted by appellant against the individual guarantors to recover the balance alleged to be unpaid. The company was composed of respondent, one Stover and Duke. The two latter defaulted. Respondent answered and set up several affirmative defenses, among which was the statute of limitations; that

the company was the principal guarantor; that since July, 1920, and up to December, 1921, appellant had been the owner of the note; that in December, 1921, appellant acquired possession of the truck and sold the same to the company and by so doing respondent was released and discharged from liability. For a further affirmative defense it was alleged that appellant, acting together with and by agreement of and in collusion with the principal guarantor, the company, proceeded to use the truck for a period of six years or more, by reason of which the truck was depreciated in value and respondent was caused loss, injury and damage to an extent greater than the amount claimed by appellant.

The cause was tried to the court and jury; judgment was had for respondent. Appellant made a motion for new trial which was denied. This appeal is from the judgment entered on the verdict and from the order denying the motion for new trial.

From the record it appears that when the truck was sold to Jones it was taken by him into Nevada and was there when Jones defaulted. The important question here is whether or not upon Jones' default appellant repossessed the truck and converted it to his own use and thereby released respondent from liability upon the note as a guarantor.

Respondent's counsel called appellant for cross-examination under the statute and propounded to him the following questions touching the return of the truck to Twin Falls, to which answers were made as indicated:

"Q. Did you bring it back?    A. No.

"Q. Who brought it back?    A. Well, the Idaho Automobile & Supply Company. I don't know just who went down after it. But I told them I wanted the truck brought back.

"Q. You told them to bring the truck back?

"A. Yes, sir."

Respondent, being called on his own behalf, was asked and answered the following question touching the repossession of the truck:

"Q. Who repossessed it? A. I don't know who repossessed it."

The evidence discloses that when the truck was brought back it was in need of repairs and was repaired by being completely overhauled at the expense of the company, and that it remained in the possession of the company. Appellant testified, which is not disputed, concerning the sale of the truck immediately after it was returned from Nevada:

"Q. Well, now then, what was this situation as to the ability to sell this particular truck after it came back from Nevada? A. Well, it was absolutely impossible to even get an offer on it.

"Q. Well now, if Flory is correct in saying that he asked you to do something about selling this truck at that time, was there any market to sell this truck? A. No, sir.

"Q. Now then, I will ask you, being familiar with that market, what in your opinion is the best price that could have been gotten for this truck at the time that Flory says he wanted you to sell it? A. Well, if he had put that up at forced sale I don't think it would have brought over $250 or $300. There is a difference in selling a truck at forced sale and selling one on long time payments; if you would put it right up and sell it for cash I don't know whether anyone would even bid on it or not.

"Q. Now when the truck was brought back did you know that the Idaho Automobile & Supply Company was using it? A. I knew they used it some.

"Q. And what conversation or talk did you ever have with them about that? A. Well, after having a talk with Mr. Flory about it he said something about using the truck so I went and told them; I told Mr. Stover and Mr. Duke not to use the truck.

"Q. And did they use it any more after that time? A. I don't know."

Respondent testified that when the truck was brought back from Nevada its "value would be at least 50 to 65 per cent of the original value.

"Q. And how much would that be, approximately? A. Well, that would be between $2,500 and $3,000."

There is no testimony in the record from which may be determined the reasonable market value of the truck when it was returned from Nevada. The fact that the witness stated what the value of the truck was does not establish the reasonable market value. It may have had a value, but if unsalable, or there being no market value, even conceding for the sake of argument that it was the duty of appellant to sell the truck or indorse its reasonable value upon the note, there was no evidence of its reasonable market value, and when finally sold by appellant no offer was made for the truck and he bid it in for $250 and indorsed that amount upon the note.

It is further disclosed by the record that after the company repossessed the truck it paid appellant something like $1000 principal and interest on the note and that during the time these payments were being made what use of the truck was made was by the company.

It must be conceded that unless appellant repossessed the truck, which he was not required to do, and converted the same to his own use, respondent was absolutely and unconditionally liable upon the guaranty and such liability arose immediately upon Jones' default, and a right of action immediately accrued to appellant against the company or against the guarantors, jointly or severally, without notice or demand. In a case of absolute guaranty the creditor is not obliged to resort to any security he may have. (*Marshall-Wells Co. v. Kramlich*, 46 Ida. 356, 376, 267 Pac. 611; *Frost v. Harbert*, 20 Ida. 336, 118 Pac. 1095, 38 L. R. A., N. S., 875; *Miller v. Lewiston Nat. Bank*, 18 Ida. 124, 108 Pac. 901; *Hungerford v. O'Brien*, 37 Minn. 306, 34 N. W. 161; *Home Sav. Bank v. Shallenberger*, 95 Neb. 593, 146 N. W. 993; Stearns on Suretyship, 2d ed., p. 73, sec. 61.)

The liability of the guarantor having thus become absolute by nonpayment of the note, the neglect of appellant to go to Nevada and repossess the truck or to sell

the same after it was returned to Twin Falls, or his refusal to sue the principal debtor or the company, would not discharge the absolute obligation of the guarantor. (*Findley v. Hill*, 8 Or. 247, 250, 34 Am. Rep. 578; *Roberts v. Hawkins*, 70 Mich. 566, 38 N. W. 575, 579.) Respondent had a remedy under C. S., sec. 7230, by which he could have had appellant's claim satisfied. From the record it is clear that by mutual agreement appellant forbore suit upon the note against the company and the guarantors to the end that with the use of the truck by the company and otherwise appellant's note would be fully paid. There is evidence from which the inference may be drawn that what was done in connection with the forbearance on behalf of appellant was with the consent and probably for the benefit of the company and the guarantors. In such circumstances the guarantors would not be released. (*Osgood v. Miller*, 67 Me. 174, 176.)

To our minds the testimony is wholly lacking to establish the fact that appellant repossessed the truck, took the same into his possession personally or through the company as agent, and converted it to his own use or benefit. We think from a careful examination of the record the proof is to the contrary, and the verdict of the jury cannot be upheld. We find no evidence in support of respondent's contention that appellant sold the truck to the company, thereby releasing the guarantors.

The cause will be remanded for a new trial, and it may be well to call attention to the fact that appellant filed the note in question as a claim in the bankruptcy proceedings of the company and received a dividend; in what amount and when paid is uncertain. Whatever dividend was received and the date when paid should be ascertained and proper credit given therefor.

Other errors are assigned but we do not deem them of sufficient importance to require discussion. We have concluded that the motion to dismiss the appeal should be denied.

From what has been said it follows that the judgment must be reversed and the cause remanded for a new trial. It is so ordered; costs to appellant.

Lee, Varian and McNaughton, JJ., concur.

Givens, C. J., dissents.