## LEE TIRE & RUBBER CO. OF NEW YORK v. McCARRAN Et Al.

No. 3125

March 12, 1936.                                         55 P. (2d) 633.

*J. W. Dignan* and *Gray Mashburn,* for Appellants:

*G. Gunzendorfer,* for Respondent:

## OPINION

By the Court, COLEMAN, J.:

This is an appeal from a judgment against defendants and an order denying a motion for new trial.

The amended complaint alleges that plaintiff is a foreign corporation; that on February 24, 1930, the defendants guaranteed the payment by one Fyhen of certain goods, wares, and merchandise which might be sold and delivered to him by plaintiff; that plaintiff on the faith of said guaranty sold and delivered to said Fyhen merchandise of the value of $1,153.17; that plaintiff had demanded payment thereof of said Fyhen, and also of defendants, but that they had failed, neglected, and refused to pay the same; and that Fyhen is insolvent. There are other allegations, not necessary here to state.

To said complaint an answer was filed, wherein it is denied that the guaranty as alleged was executed; that the defendants, or either of them; had given a guaranty to the plaintiff that "has not been revoked * * * and deny that the guaranty therein referred to is now in full force and/or in effect." The answer denies all the other allegations of the complaint.

For a separate and further answer and affirmative defense, it is averred that at the time of the commencement of the action, and ever since, the plaintiff was a foreign corporation, existing pursuant to the laws of

New York; that plaintiff did not prior to the filing of its complaint, or at all, file with the secretary of state of the State of Nevada a copy of its charter or certificate of incorporation; and that plaintiff had no license to transact business in this state or to maintain this action.

For a further, separate, and affirmative defense, the defendants allege that on or about February 24, 1930, the plaintiff entered into a contract to sell and deliver goods to Fyhen upon certain conditions, and thereupon the defendants signed a written guaranty guaranteeing the payment and the performance of the obligations entered into between plaintiff and Fyhen; that thereafter and on or about the 25th day of April, 1930, the plaintiff and Fyhen materially altered, changed, and amended the said contract so entered into, so as to provide for the consignment of goods, wares, and merchandise by plaintiff to Fyhen, to be sold on commission; and that said change was made without the knowledge or consent of the defendants or either of them, whereby they were released from any obligation thereunder. Plaintiff filed a reply denying the new matter contained in said answer.

At the conclusion of the trial the court took the case under advisement, and thereafter rendered an oral opinion and ordered findings and judgment in favor of the plaintiff.

According to the formal findings of facts, the plaintiff is a New York corporation; the defendants, on February 24, 1930, entered into a written guaranty whereby they guaranteed the payment, when due, of any and all present or future indebtedness incurred by Fyhen, on account of goods, wares, and merchandise sold Fyhen, not to exceed $3,000, until written notice of withdrawal of said guaranty is given; that the plaintiff, upon the faith of said guaranty, at the city of San Francisco, Calif., between February 24, 1930, and June 17, 1930, sold and delivered upon credit to Fyhen goods, wares, and merchandise of the value of $1,153.17; that on June 17, 1930, plaintiff and Fyhen entered into and

made a new agreement, pursuant to which plaintiff was thereafter to furnish goods to the said Fyhen, on consignment; that on said 17th day of June, 1930, said Fyhen returned to plaintiff, and plaintiff took back, the unsold goods, wares, and merchandise previously sold to and then in the hands of said Fyhen, and thereupon gave said Fyhen credit for the goods so returned and taken back; that on the 17th day of June, 1930, after the return of the goods, wares, and merchandise mentioned, the said Fyhen was indebted and owed to plaintiff for goods, wares, and merchandise theretofore sold and delivered upon credit to said Fyhen the sum of $2,069.62; and that on the date this action was commenced Fyhen owed to plaintiff for goods, wares, and merchandise sold on credit and delivered to him under said agreement of guaranty, prior to June 17, 1930, a balance of $1,160.80, which is still due, owing, and unpaid to plaintiff; that by reason of said sale and guaranty the defendants became indebted to the plaintiffs on June 17, 1930, and are now indebted to plaintiff in the sum of $1,160.80.

The court found all of the other issues in favor of the plaintiff, and ordered judgment in its favor in the sum of $1,153.17, the amount demanded in the complaint, with interest.

As we understand the points made by appellants, they are that the principal contract was so changed as to discharge them; and, second, that if such is not the case, the judgment is contrary to the evidence. Counsel says in his brief that the only question of law involved is as to whether or not the appellants have been discharged by reason of a material alteration of the principal contract.

It is urgently contended that the plaintiff cannot recover for the reason that there was a material alteration in the principal contract. As a basis for the contention, counsel for appellants quote as follows: "In accordance with the rule that a guarantor cannot be held liable beyond the strict terms of his contract, as a general rule, any material change in

the obligation or duty of the principal, to which the guaranty relates, by a change or alteration either in the terms of the contract between the guarantee and the principal or in the manner of its execution, without the consent of the guarantor, will release him from liability thereon, provided such change takes place before the guarantor's liability is finally settled; and in some jurisdictions this rule is in effect prescribed by statute. The general rule applies, although the guarantor had knowledge of the change, if it is carried out without his consent." 28 C. J., p. 994.

Many other authorities are cited to sustain this general rule, among them 12 R. C. L. 1083. Other authorities are quoted from, stating the extent of the liability of a surety. There are distinctions between the liability of a guarantor and a surety, but we need not consider them here.

Accepting the general rule above stated as to the liability of a guarantor, let us determine the extent of the liability of the guarantors in the instant matter.

■ Was there a material change in the principal contract in question? Clearly not. In fact, there was no change whatsoever. There was merely a termination of the agreement between plaintiff and Fyhen, whereupon the liability of the guarantors terminated, except as to liability which had theretofore accrued.

There is nothing in the agreement between the parties indicating that the contract might not be terminated in the manner in which it was. By the termination of the contract of sale, the liability of guarantors ceased, so far as subsequent transactions between plaintiff and Fyhen are concerned. Certainly defendants cannot complain of this. No case is cited by either counsel to the effect that a termination of the principal contract is equivalent in legal effect to a material change in the terms of such contract, and we have been unable to find one after diligent search, for the reason, no doubt, that none exists, since guarantors are, as a rule, highly pleased to have their liability for future transactions

terminated, and do not feel that they are, or can be, injured thereby.

The court found that on the 17th of June, 1930, the balance due the plaintiff was in excess of $5,000; that on the 17th day of June the plaintiff and Fyhen entered into an agreement by which the plaintiff accepted or took back from Fyhen $4,275.12 worth of merchandise, and entered into the commission agreement, and that thereafter all the dealings between plaintiff and Fyhen were on a commission basis; that on the 25th of June the plaintiff gave Fyhen credit (on its books, we assume) "for $4,275.12 worth of merchandise and $668.58 worth of merchandise, making something over $4,900.00 worth of merchandise, and that after so crediting Mr. Fyhen there was due $1,009.62 from Fyhen to plaintiff. The cash received after that period was contained in four items. On July 1st there was a payment of cash credited to Mr. Fyhen in the sum of $580.00 and on the 9th another credit of $49.38, and on the 25th of July, $222.00, and on the 25th of August $375.00, and on the 31st of October, $107.25, but as to whether that was a payment on the old indebtedness for which the defendants were guarantors, or whether it is for the tires sold by Mr. Fyhen as consignee under the consignment agreement, there is entirely no testimony whatever."

In another place in the opinion of the court it is said: "It may be that Mr. Fyhen paid to the Lee Tire & Rubber Company more than was coming to the Lee Tire & Rubber Company as the owners of the tires under the consignment agreement, but how can the court say whether he did or not? After the entire business was wound up, according to the evidence that is before the court furnished by the plaintiff when the burden of proving those facts rested upon the defendants, there was $1,165.05 due on the tire account, because there has been no absolute segregation in the books of the plaintiff between the liability growing out of the sale, and the liability, if any, growing out of the consignment agreement."

As to the point that the judgment is excessive, counsel for appellants quote copiously from the opinion of the learned trial judge, which is embraced in the bill of exceptions, to show that the trial judge resorted to the wrong method in arriving at the amount paid by Fyhen, and erroneously assumed in doing so that the burden of proving payment was upon the defendants. Counsel quote from the opinion of the trial court as follows: "The books are the only evidence as to payments, and as I said before the burden of showing payments rests upon the defendants, not upon the plaintiff, and the only evidence of payment after the 17th day of June, when the liability was $2009.62, was shown by the plaintiff, and they have reduced that liability to $1,160.05."

██ It thus appears that the trial court assumed that the burden of proving payment was on the defendants (guarantors). The well-established rule is to the contrary. 28 C. J., pp. 1024, 1025; Armour & Co. v. Bluthenthal & Bickart, 9 Ga. App. 707, 72 S. E. 168; Craig v. Phipps, 23 Miss. 240; Goodman v. Parish, 2 McCord (13 S. C. Law) 259.

If Fyhen was entitled to be credited with the payments made after July 1, 1930, or any of them, the amount of the judgment would necessarily be reduced by a considerable amount. By placing the burden of proof upon the defendants, the court committed reversible error. Long Valley L. & D. Co. v. Hunt, 51 Nev. 5, 266 P. 917.

We do not think there is any merit in the other points made by appellant.

The trial court having erroneously assumed that the burden of proof is upon the defendants, the judgment must be reversed.

It is so ordered.

(Petition for rehearing pending.)