CHEVRON CHEMICAL COMPANY, a
Delaware corporation, Plaintiff,

v.

Craig W. MECHAM and R. Kent
Heileson, Defendants.

No. C 76–248J.

United States District Court,
D. Utah, C. D.

March 5, 1982.

Samuel Gaufin and Craig Smay, Salt Lake City, Utah, for plaintiff.

P. Keith Nelson, Edward Clyde, Frank J. Allen, Paul Howell, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION

JENKINS, District Judge.

This is an action for collection of a debt.

### I. JURISDICTION

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 (1976). Venue is proper as well. 28 U.S.C. § 1391 (1976).

### II. STATEMENT OF THE CASE

In April, 1968 the plaintiff, Chevron Chemical Co., extended a $10,000 line of credit to the Great Basin Grain Co., an Idaho corporation, to enable it to purchase quantities of fertilizer and pesticide for commercial resale as part of Great Basin's business. See Plaintiff's Exhibit No. 14. In August of that year, Chevron increased Great Basin's line of credit to $50,000 in consideration of receipt of personal guarantees of payment from Craig Mecham, President of Great Basin, and R. Kent Heileson, Great Basin's Secretary and Treasurer. See Plaintiff's Exhibit No. 15; Trial Transcript at 8–12.

The text of the personal guarantee reads as follows:

Tetonia, Idaho
July 31, 1968

CHEVRON CHEMICAL COMPANY
GENTLEMEN:

In consideration of your granting credit to Great Basin Grain Co., Inc., located at Tetonia, Idaho (hereinafter referred to as the "Customer"), and other valuable consideration, the undersigned hereby guarantees the payment when due of all your charges for the account of said customer of whatever nature, for goods sold and delivered heretofore or hereafter. The undersigned hereby waives diligence, demand and notice from you or on your part, and authorizes you to change the time for payment by the customer without notice to the undersigned. This guaranty is a continuing one and shall remain in force until such time as you receive at your Portland, Oregon office, written notice of the termination thereof from the undersigned.

Dated 8–12, 1968

/s/  Craig W. Mecham
_____
(Allen Mecham)
_____
(Ralph A. Heileson)
/s/  R. Kent Heileson

Great Basin subsequently entered into a number of credit transactions with Chevron; by May 22, 1969, a balance of $77,698.48 had accumulated, as was reported on a Chevron invoice of that date. See Invoice No. 4711, Plaintiff's Exhibit No. 65; Defendants' Exhibit MM. Great Basin's account was considered in default as of April, 1969. Though partial payments had by then been made, Chevron terminated Great Basin's credit as of September 9, 1969. See Pretrial Order at 14. At that point, Great Basin's account balance totalled $69,197.53. See Plaintiff's Exhibit No. 65; Defendants' Exhibit No. MM.

As of May 1970, Great Basin had made payments reducing the balance to $42,148.53. See Defendants' Exhibit MM. On May 22, 1970, Chevron's district credit manager, Mr. H. T. Nixon, notified Great Basin and defendant Mecham by letter of Chevron's concerns regarding the remaining delinquent balance and the need for immediate payment. See Plaintiff's Exhibit 30. Mecham, who had disassociated himself from Great Basin in March or April, 1970, formally notified Chevron that he was terminating his continuing guarantee of Great Basin's account by letter dated May 26, 1970. See Plaintiff's Exhibit No. 31. Chevron acknowledged receipt of that letter in a memo dated May 27, 1970, Plaintiff's Exhibit No. 32, and in a letter to Mecham dated May 28, 1970, Plaintiff's Exhibit No. 33.

Upon Great Basin's failure to make full payment upon the account in the weeks that followed, Chevron through its attorneys sent letters to Great Basin and its guarantors, R. Kent Heileson and Craig W. Mecham, demanding payment.

Additional payments were made by Great Basin in the months that followed. Beyond that, Great Basin executed a promissory note in the amount of its open account indebtedness, including interest ($28,301.59), see Plaintiff's Exhibit No. 45, on October 23, 1970, and delivered the same to Chevron, accompanied by a mortgage executed in Chevron's favor by Great Basin, see Plaintiff's Exhibit No. 46.[1] In return, Chevron granted an extension of time for payment to December 31, 1970. Defendant Mecham was fully apprised of the situation and made no objection. Trial Transcript at 28–29, 198; Plaintiff's Exhibits Nos. 47, 50. Chevron granted a further extension to January 15, 1971.[2] Mecham was so informed by letter of December 21, 1970. See Plaintiff's Exhibit No. 53.

---

1. As to whether the note was taken as satisfaction of the open account indebtedness, or merely as evidence of the indebtedness, see pp. 1045–1046, *infra*.

2. This extension was apparently conditioned upon Great Basin's making an installment payment due the Bank of Salt Lake, an obligation guaranteed by both Chevron and Mecham.

Trial Transcript at 36. By letter of December 10, 1970, the Bank of Salt Lake had informed Great Basin and Chevron that if the installment payment was not made by December 24, 1970, the Bank would look to Great Basin's guarantor Chevron Chemical Company for full payment. See Plaintiff's Exhibit No. 52.

█ Four months later, the balance due Chevron remained unpaid. On April 5, 1971, R. Vern Kidwell, attorney for Chevron, sent a demand letter seeking full payment from Craig W. Mecham as guarantor. See Plaintiff's Exhibit No. 54. On April 7, 1971, Chevron remitted payment of the principal and interest ($17,457.38) due on a loan to Great Basin made by the Bank of Salt Lake, which Chevron had guaranteed. See Plaintiff's Exhibit No. 55.[3] In return the Bank of Salt Lake assigned to Chevron any and all interest it had in Great Basin's loan collateral, including real property in Tetonia, Idaho, and equipment listed in a security agreement executed in aid of the loan.

Shortly after that, Great Basin Grain Co. was adjudicated a bankrupt in U. S. District Court for the District of Idaho, Eastern Division. See *In re Great Basin Grain Co.,* No. BK 71–135. Chevron filed a proof of claim as a secured creditor[4] and a petition for reclamation of Great Basin's real estate in Tetonia, the trust deed to which Chevron had received by assignment from Bank of Salt Lake. In April, 1972 leave was granted permitting Chevron to foreclose upon the mortgage and trust deed.

On December 29, 1972, Chevron purchased the Tetonia property at a sale pursuant to the Idaho Trust Deed Act for the sum of $17,457.38.[5] Four months later, on April 10, 1973, Chevron resold the Tetonia property to General Mills for $30,051.00, prior to deduction of fees and costs.[6]

The Idaho bankruptcy proceedings effectively discharged the delinquent open account balance as against Great Basin Grain Co. In the meantime, Chevron Chemical Co. had filed a civil action in state district court in Idaho against the two guarantors, R. Kent Heileson and Craig W. Mecham.[7] Trial on the issue of liability was held on April 9, 1973; the issue of damages was tried in April and May of 1974. Defendant Mecham appeared and defended both issues in the Idaho proceedings.[8] The Idaho court found both guarantors to be jointly and severally liable to Chevron for the amount still owing on the open account, including interest. See Plaintiff's Exhibit No. 3.

Chevron sought enforcement of the Idaho judgment in Utah state court. Defendant Mecham appealed from the enforcement proceedings, challenging the original *in personam* jurisdiction of the Idaho court. The

3. As a defense to this action, Mecham asserts that he was prejudiced by Chevron's extension of Great Basin's obligation in favor of an installment payment to the Bank of Salt Lake. See Defendants' Trial Brief at 5.

Any payment to the Bank of Salt Lake was to Mecham's *benefit* rather than his prejudice; Mecham was a guarantor of the Bank of Salt Lake loan, and any retirement of that obligation necessarily lessened Mecham's liability therefor. Chevron's payment of the whole balance of that loan on April 7, 1971 relieved Mecham of any liability on his guaranty to the Bank. "[A] guarantor . . . cannot complain of the money being used to reduce an indebtedness which otherwise would be owed by him as guarantor." *Industrial Inv. Corp. v. Rocca,* 100 Idaho 228, 596 P.2d 100, 105 (1979). It is also clear that a guarantor does not control payment of the principal debtor's obligations. *Id.*

4. The Bank of Salt Lake's security interest in certain listed equipment was not perfected by a filing in the State of Idaho. As a consequence, Chevron's claims over and above its interest in the Tetonia property mortgage and trust deed were treated as those of an unsecured creditor.

Chevron recovered nothing on its unsecured claims. See Pretrial Order at 18.

5. This was the amount of principal and interest paid by Chevron when it purchased the Bank of Salt Lake's interest.

6. Following deduction of accumulated expenses of $28,956.18, Chevron realized a net gain of $1,390.82. Plaintiff's Exhibit No. 68. That net gain was credited to the principal amount of the open account indebtedness. Plaintiff's Exhibit No. 69.

7. *Chevron Chemical Co. v. Craig W. Mecham and R. Kent Heileson,* Case No. 18753 (dist.ct., 7th jud. dist. 1971).

8. While R. Kent Heileson appeared in the 1973 liability proceedings, he failed to appear at the 1974 hearings, and judgment was entered against him by default. See Memorandum Opinion filed herein by this Court on March 19, 1981. Chevron has sought enforcement of that Idaho judgment in this Court. See Judgment against defendant R. Kent Heileson, entered herein July 2, 1981.

Utah Supreme Court held that the Idaho court had indeed lacked jurisdiction over Mecham, rendering that judgment unenforceable. See *Chevron Chemical Co. v. Mecham*, 550 P.2d 182, 184 (Utah 1976).

Dismissal of the enforcement proceedings moved Chevron to commence an action in this Court based upon the original claim. The issues of Mecham's liability and damages survived the pretrial and summary judgment procedures; trial of those issues to this Court was held on March 23 and 24, 1981. Testimony and exhibits were received, arguments of counsel were heard, and the matter was taken under advisement.

### III. CHOICE OF LAW

■ In rendering a decision on the plaintiff's claims, this Court has applied the relevant law of the State of Idaho. Though Utah law is the law of this forum in diversity cases generally, see *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this Court is entitled to rely upon the forum's conflict of laws principles and its choice of law rules in adjudicating the actions that come before it. See *Mullinax Eng. Co. v. Platte Valley Const. Co.*, 412 F.2d 553, 555 (10th Cir. 1969).

■ In determining the force and effect of the provisions of a contract, Utah courts have applied the *lex loci contractus* rule and look to the law of the place of the making of the contract. See *Crofoot v. Thatcher*, 19 Utah 212, 57 P. 171 (1899); *Petrof Trading Co. v. Intermountain Research & Eng. Co.*, 424 F.2d 704, 706 (10th Cir. 1970); *Trans-American Collections, Inc. v. Continental Account Servicing House, Inc.*, 342 F.Supp. 1303, 1305 (D.Utah 1972). The record herein as well as the face of the instrument evidence that Mecham's guaranty was made in Idaho.

Following the analysis urged by the Restatement (2d) of Conflict of Laws, an approach of more contemporary vintage, would reach the same result. Section 188 of the Restatement reads as follows:

> § 188. Law Governing in Absence of Effective Choice by the Parties
>
> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, . . .

The balance of § 188 factors in this case weighs heavily in favor of Idaho law as the governing law.[9]

### IV. MECHAM'S DEFENSES

Defendant Craig W. Mecham seeks to avoid liability on several grounds: (1) that Chevron accepted a promissory note in payment of the open account obligation, thereby discharging the guarantors; (2) that Chevron materially altered the guaranteed obligation without his consent by granting extensions to Great Basin; (3) that the

---

9. Idaho was the place of the negotiations on the contract, the execution of the guarantee, the place of delivery of goods upon open account credit by Chevron, and was the location, domicile and residence of Great Basin Grain Co. and R. Kent Heileson.

guaranty was discharged by such material alterations occurring after Mecham's termination of his guarantee by written notice to Chevron; (4) that Mecham, as an uncompensated guarantor or surety was prejudiced and thereby discharged as a result of Chevron's handling of certain collateral and by pressure exerted by Chevron over Great Basin's financial affairs; (5) that Mecham, as an uncompensated guarantor was discharged by any alteration of the Great Basin open account obligation which Mecham had guaranteed; and (6) that the interest rate charged by Chevron on the open account was usurious and thereby legally invalid. See also note 3 *supra*. The plaintiff denies the validity of each and every defense.

There is no question that the document executed by Mecham operates as a guaranty. See *e.g., Commercial Credit Corp. v. Chisholm Bros. Farm Equip. Co.*, 96 Idaho 194, 525 P.2d 976, 978 (1974); Plaintiff's Exhibit No. 16. It is a continuing guaranty, serving to secure "a future course of dealing or a succession of credits," *Goldman v. Dangerfield*, 101 Cal.App. 67, 281 P. 400, 403 (3d Dist. 1929), which may extend "over an indefinite time." *Commercial Credit Corp., supra*, 525 P.2d at 978. It is an absolute guaranty, *i.e.*, "an unconditional undertaking on the part of the guarantor that he will pay the debt or perform the obligation immediately upon the debtor's default without any necessity to first exhaust the principal" debtor. *Commercial Credit Corp., supra*, 525 P.2d at 978–979; *Pavlantos v. Garoufalis*, 89 F.2d 203, 206 (10th Cir. 1937).

As a preliminary matter, this Court "is mindful of the well-settled rule that guaranty agreements are to be construed strongly in favor of the guarantor." *McGill v. Idaho Bank and Trust Co.*, 102 Idaho 494, 632 P.2d 683, 686 (1981); *Industrial Investment Corp. v. Rocca*, 100 Idaho 228, 596 P.2d 100 (1979); *J. R. Watkins v. Clark*, 65 Idaho 504, 147 P.2d 348 (1944). A guarantor cannot be held liable beyond the strict terms of his contract, whether beyond express limits or terms of the instrument or

its plain intent. See *General Appliance Corp. v. Haw, Inc.*, 30 Utah 2d 238, 516 P.2d 346 (1973); *Bank of New Mexico v. Northwest Power Products*, 95 N.M. 743, 626 P.2d 280, 284 (Ct.App.1980); *Seattle First National Bank v. Hawk*, 17 Wash.App. 251, 562 P.2d 270 (1977); but see *Riverside Nat. Bank v. Manalakis*, 613 P.2d 438 (Okl.1980). However, strict construction alone will not relieve a guarantor of liability incurred under the plain meaning of the guaranty instrument. See *J. R. Watkins Co. v. Clark*, 65 Idaho 504, 147 P.2d 348, 351 (1944).

## A. Interest

Applying these fundamental principles to the Mecham guaranty, one issue disputed by the parties may be readily resolved. No wording in the guaranty instrument expresses the intent that Mecham guaranty the payment of interest or service charges on the open account obligation, nor does it plainly appear from the record that the parties agreed that Mecham would have a duty to do so. The Mecham guaranty to Chevron guarantees payment of "all your charges for the account of said customer of whatever nature, for goods sold and delivered heretofore or hereafter." In contrast, the Mecham guaranty to the Bank of Salt Lake pursuant to a loan to Great Basin guarantees payment of "any and all amounts which the debtors may now owe, or may hereafter owe, to the bank . . ., and with interest on said amounts in accordance with the tenor of the respective obligation, or in accordance with law." Plaintiff's Exhibit No. 23.

In *Jacobson v. Best Brands, Inc.*, 632 P.2d 1150 (Nev.1981), the court held that a guarantor owed no obligation to pay interest on the relevant indebtedness where the parties had excised the language in the form of guaranty which referred to interest. *Id.* at 1152 & n.3. In the case at bar the guaranty of interest is conspicuous not by its interlineation, but by reason that the parties did *not* include such terms at all. This Court will not hold Mecham liable for

interest obligations that he never expressly contracted to guaranty.[10]

The remaining points of conflict are as effectively resolved through reflection on the nature of a guaranty obligation and the specific facts now appearing of record.

### B. Enforceability of Guaranty

■ Guaranties are ancillary bargains; they are collateral contracts executed in aid of a contractual relationship between the principal debtor and the creditor. They are unusual contracts in the sense that the consideration binding the guarantor runs not from creditor to the guarantor, but from the creditor to the principal debtor. "A guarantor who receives no consideration for his promise is nevertheless bound, if consideration moves to the principal debtor." *Ethyl Corp. v. Jalbert*, 270 Or. 651, 529 P.2d 368, 369 (1974) (footnote omitted). The detriment incurred by the creditor, if occasioned by the guarantor's execution of the guaranty, is no less legally sufficient. See Restatement (Second) of Contracts § 71 (1981); *Knox v. First Security Bank of Utah*, 196 F.2d 112, 118 (10th Cir. 1952).

■ In the case at bar, Chevron increased the line of credit extended to Great Basin Grain Co. from $10,000 to $50,000 in consideration for delivery of the personal guaranties of Craig W. Mecham and R. Kent Heileson, both of whom were at that time corporate officers of Great Basin. The guaranty itself recites a consideration of the extension of credit as well as "other valuable consideration." See Plaintiff's Ex-hibit No. 16. Notwithstanding counsel's emphasis on theoretical distinctions between compensated and uncompensated sureties, see Defendants' Trial Brief at 5–10, the Mecham guaranty represents a binding contractual commitment to the extent that Chevron has incurred a detriment in favor of the principal debtor, Great Basin Grain Company.[11]

### C. Effect of Termination

■ As discussed *supra*, defendant Mecham formally terminated his continuing guaranty on the Great Basin open account by letter to Chevron of May 26, 1970. Plaintiff's Exhibit No. 31. Termination foreclosed the possibility of future liability accruing from subsequent transactions between Chevron and Great Basin. It did not relieve Mecham of liability for amounts owed for deliveries on credit to Great Basin prior to delivery of the notice of termination. As Professor Corbin has explained:

A promise of guaranty, when it is a mere offer by the guarantor, is revocable like other offers. This is true whether the offer of guaranty provides for acceptance by a return promise, by appointing someone to a position of trust, or by the giving of credit in the form of goods or money or acceptances to some third person. *It becomes irrevocable after the indicated acceptance has been given.* A letter of credit or promise to guarantee the repayment of advances to be made to a third person is ordinarily an offer that can be accepted by the making of an

---

**10.** This determination renders it unnecessary to determine whether the interest and service charges accumulated by the open account pursuant to Chevron's terms is usurious, or otherwise unreasonable or invalid.

Whether Chevron may be entitled to interest at the judgment rate based upon Mecham's liability, if any, accruing from the date of Chevron's default (cc. April, 1969) is a separate issue. See p. 1048 *infra*.

**11.** The Restatement (Second) of Contracts § 88 (1981) states the governing principle:

§ 88 Guaranty
A promise to be surety for the performance of a contractual obligation, made to the obligee, is binding if

(a) the promise is in writing and signed by the promisor and recites a purported consideration; or

(b) the promise is made binding by statute; or

(c) the promisor should reasonably expect the promise to induce action or forbearance of a substantial character on the part of the promisee or a third person, and the promise does induce such action or forbearance.

Of course, until Chevron delivered goods advanced on credit to Great Basin the Mecham guaranty remained in the status of a revocable offer.

advance, a unilateral contract being the result. *As to the advance once made, the offer of guaranty is no longer revocable; if the offer is a divisible one creating power to make a series of separate unilateral contracts, a notice of revocation is effective as to advances not yet made.* 1 Corbin on Contracts § 38 at 162 (1963) (emphasis added and footnotes omitted). The analysis expressed by Corbin is harmonious with the general rule [12] and finds reflection in the Idaho case law. In *New Idea Spreader Co. v. Satterfield*, 45 Idaho 753, 265 P. 664 (1928), for example, individual officers of a debtor corporation made an unconditional promise of guaranty of payment of the purchase price on all goods, wares, and merchandise sold by the creditor to the corporate entity, which promise continued until revoked. The creditor did in fact sell goods to the corporate debtor. The Idaho Supreme Court held the guarantors to be bound on their promise of payment for such goods, even in the absence of a formal acceptance. *Id.*, 265 P. at 666.[13]

▮ As noted above, a guaranty is a contractual obligation collateral to a primary contract. Default on the primary contract by the debtor ripens an unconditional guaranty into an actionable liability of the guarantor separate and apart from that of the principal debtor. The guarantor's obligation becomes absolute and is no longer secondary; the creditor may pursue the guarantor without obligation to first seek payment from the principal debtor. See *Frost v. Harbert*, 20 Idaho 336, 118 P. 1095, 1096–1097, 38 L.R.A. (N.S.) 875 (1911); *Miller v. Lewiston Nat'l Bank*, 18 Idaho 124,

108 P. 901 (1910); *Rawleigh Medical Co. v. Atwater*, 33 Idaho 399, 195 P. 545 (1921); *Marshall-Wells Co. v. Kramlich*, 46 Idaho 355, 267 P. 611 (1928); *Sanger v. Flory*, 49 Idaho 177, 286 P. 610 (1930); *Smith v. Steele Motor Co.*, 53 Idaho 238, 22 P.2d 1070, 1071 (1933); *National Bank of Washington v. Equity Investors*, 81 Wash.2d 886, 506 P.2d 20 (1973); *Rainer Nat'l Bank v. Lewis*, 30 Wash.App. 419, 635 P.2d 153, 155 (1981); *Bank of America Nat'l Trust & Savings Ass'n v. McRae*, 81 Cal.App.2d 1, 183 P.2d 385, 389 (3d Dist. 1947); *Lyon v. Featherman*, 80 Mont. 504, 261 P. 268 (1927); 38 C.J.S. Guaranty §§ 66, 85 (1943).

To be relieved from his liability under the guaranty, which became binding through the advances made by Chevron and was rendered absolute by Great Basin Grain Co.'s default on the open account obligation,[14] defendant Mecham must establish at least one of the available defenses: (1) that Chevron's claim is barred by the statute of limitations, see *e.g.*, *Brock v. Western Nat'l Indemnity Co.*, 132 Cal.App.2d 10, 281 P.2d 571, 575–576 (2d Dist. 1955); (2) that Mecham has been released or discharged as guarantor in some fashion, see 38 C.J.S. Guaranty §§ 67–83 (1943); or (3) that the principal obligation has been satisfied through payment or otherwise, see *McGill v. Idaho Bank & Trust Co.*, 102 Idaho 494, 632 P.2d 683, 686 (1981).

The statute of limitations defense was rejected as to Mecham prior to trial. See Orders entered herein on April 4, 1978 and April 22, 1979. Mecham asserts that he has been discharged from the guaranty obliga-

---

**12.** 38 C.J.S. Guaranty § 36 (1943) summarizes the case law as follows:

In the absence of a provision in the contract to the contrary, a guarantor may revoke a continuing guaranty for which the consideration is not executed; but he cannot thereby escape liability for advances which have been made or responsibilities which have been incurred on the strength of the guaranty before notice of revocation is given, nor may he revoke the guaranty where the consideration given is entire and has been executed. See also *id.*, at notes 55–67 and accompanying text; *Marking Systems v. Interwest Film Corp.*, 567 P.2d 176 (Utah 1977).

**13.** See also *Nielsen v. Davidson*, 66 Cal.App. 442, 226 P. 835, 836 (1st Dist. 1924); *First Nat'l Bank in Albuquerque v. Energy Equities*, 569 P.2d 421 (N.M.App.1977); 38 C.J.S. Guaranty § 36 & n.59 (1943); 38 Am.Jr.2d Guaranty § 63 & n.4 (1968).

**14.** Mecham's liability was settled by Chevron's extensions of credit and Great Basin's default more than one year before Mecham gave notice of his intent to terminate the guaranty. See p. 1042 *supra*; *Brock v. Western Nat'l Indemnity Co.*, *supra*.

tion by (1) extensions granted Great Basin Grain Co. by Chevron following default, and (2) by Chevron's acceptance of a promissory note and mortgage in alleged payment of the open account obligation.

### D. Effect of Extensions

Mecham expressly guaranteed payment of amounts due on the Chevron account, including authorization for "[Chevron] to change the time for payment by the customer [Great Basin] without notice to the undersigned [Mecham]." Plaintiff's Exhibit No. 16. It readily could be argued that Mecham's consent to extensions of the due date by Chevron form a part of the consideration for Chevron's extension of credit made binding and irrevocable by Chevron's advances of goods to Great Basin. As Professor Williston comments,

> Where a guaranty expressly includes renewals or extensions of an original obligation, if there is sufficient consideration for the guaranty of the original obligation, the guaranty is irrevocable in respect to extensions or renewals. The guarantor is not promising a series of performances. There is but one debt, and the guaranty is simply a promise to pay that one debt, if the principal debtor fails to do so.

10 Williston on Contracts § 1253 at 807 (3d ed. Jaeger 1967) (footnote omitted). In *Corn Exchange Bank & Trust Co. v. Gifford*, 268 N.Y. 153, 197 N.E. 178, 100 A.L.R. 1233 (1935), the New York Court of Appeals held that a continuing guaranty which by its terms covered renewals and extensions of time obligated the guarantor to pay the amounts due prior to revocation even if the original indebtedness was renewed or extended following revocation. A similar result was reached by the Supreme Court of Washington in *Exchange Nat'l Bank v. Hunt*, 75 Wash. 513, 135 P. 224 (1913), which held that the death of the guarantor did not revoke the guaranty as to existing indebtedness even if subsequently renewed.

See also *First New Jersey Bank v. F. L. M. Business Machines, Inc.*, 130 N.J.Super. 151, 325 A.2d 843 (1974).

On the other hand, there is substantial authority for the view that revocation of a continuing guaranty terminates the guarantor's consent to any future extension or renewal, see *e.g., Merchants' Nat'l Bank v. Cressey*, 164 Iowa 721, 146 N.W. 761 (1914); *Bank of United States v. Andron*, 155 Misc. 21, 277 N.Y.S. 594 (1934), or that an extension or renewal creates a new obligation not covered by the revoked guaranty. See *e.g., Gandy v. Park Nat'l Bank*, Colo., 715 P.2d 20 (1980); Annot., 100 A.L.R. 1236 (1936). This would appear to be the Idaho rule as well. Cf. *Ore-Ida Potato Products v. United Pacific Ins. Co.*, 87 Idaho 185, 392 P.2d 191, 199 (1964).[15]

This Court need not resolve this theoretical conflict; liability of Mecham as guarantor turns on different questions arising from the status of his obligation at the time of revocation and the nature of the "extensions" granted Great Basin by Chevron.

Great Basin Grain Co. had defaulted on its open account obligation long before Mecham revoked his continuing guaranty. See 1038–1039 *supra*. As discussed above, Great Basin's default triggered Mecham's independent liability as guarantor. A cause of action against Mecham accrued in Chevron's favor at the moment of default. See *Smith v. Steele Motor Co.*, 53 Idaho 238, 22 P.2d 1070, 1071 (1933), and cases cited therein; *Bank of America Nat'l Trust & Savings Ass'n v. McRae*, 81 Cal.App.2d 1, 183 P.2d 285, 389 (1947); *Amick v. Baugh*, 66 Wash.2d 298, 402 P.2d 342 (1965). Default fixes the guarantor's liability to the creditor. *Ranier Nat'l Bank v. Lewis*, 30 Wash.App. 419, 635 P.2d 153, 155 (1981). It becomes a separate obligation, unaffected by accommodations made between the creditor and the principal debtor. See *e.g., Frost v. Harbert*, 20 Idaho 336, 118 P. 1095 (1911); *Lee Tire & Rubber Co. of New York v. McCarran*, 56 Nev. 458, 55

---

**15.** The *Ore-Ida* case, however does not deal with the effect of a revocation on a guaranty obligation. It dealt with a guaranty in force at the time of the extension. See also Annot., 74 A.L.R.2d 734 (1960).

P.2d 633, 635 (1936); 38 C.J.S. Guaranty § 72 (1943).

Mecham's guaranty was unconditional; it was not contingent upon Chevron taking any action against Great Basin. See *Commercial Credit Corp. v. Chisholm Bros. Farm Equip. Co.*, 96 Idaho 194, 525 P.2d 976 (1974). Only if transactions between Chevron and Great Basin acted to extinguish the original open account obligation would Mecham be discharged.

■ For these reasons, this Court concludes that Mecham's guaranty obligation was not discharged by any "extension" granted Great Basin. His liability was fixed upon Great Basin's default and was transformed from a collateral to a direct obligation.

This conclusion is further buttressed by the nature of the "extensions" granted Great Basin. Nothing in the record indicates that at any time after April 1969, Chevron treated the Great Basin account as anything other than delinquent. The "extensions" were not extensions of the due date on the obligation. Chevron merely extended the period in which Great Basin could cure the existing default before Chevron would actively pursue its more drastic creditor's remedies. They might more aptly be described as "forbearances." However they are named, they did not effect a discharge of Mecham's independent liability based upon his guaranty.[16]

### E. Effect of Taking of Note and Mortgage

■ Mecham further argues that acceptance by Chevron of a promissory note and mortgage executed by Great Basin was in satisfaction of the open account indebtedness and that his obligation as guarantor was thereby discharged. Chevron argues that the promissory note was executed in the amount of the open account indebtedness and was taken merely *as evidence* of that obligation, and the mortgage as collateral security.

As the Supreme Court of Idaho observed in *Minidoka County v. Krieger*, 88 Idaho 395, 399 P.2d 962, 972 (1965), "[t]he presumption attains that in the absence of an affirmative showing, a note is not taken in extinguishment of an antecedent debt but as mere evidence of it." Mecham has offered no more evidence herein that the Great Basin note was taken in payment of the open account than did the respondents in *Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co.*, 87 Idaho 185, 392 P.2d 191 (1964). In *Ore-Ida*, the Supreme Court of Idaho found such evidence insufficient to establish the express intent to extinguish the open account indebtedness in that case. *Id.*, 392 P.2d at 194–195. This Court finds the evidence herein equally inadequate to prove an "express understanding" of the parties that the Great Basin note was taken "as absolute payment" of the open account indebtedness. *International Trust Co. v. City of Rexburg*, 48 Idaho 279, 281 P. 472, 474 (1929); *Reeves v. Andersen*, 89 Idaho 512, 406 P.2d 812, 815 (1965); 38 C.J.S. Guaranty § 77, at 1246 & n.24 (1943). Testimony at trial indicates Chevron's intent to take the note as summary evidence of the open account obligation arising from a lengthy string of invoices. See Trial Transcript at 27, 32, 87. At best, Mecham offers a mere inference of absolute payment.[17]

### F. Effect of Loss of Collateral

■ It seems well-settled under Idaho law that a creditor owes no duty to a guarantor to look first to other collateral—or for

---

**16.** In fact, Mecham was informed of these transactions as they occurred, putting him on notice as to any need on his part to pursue his own rights as against Great Basin. Mecham offers no substantive basis for concluding that he was actually prejudiced by the "extensions." See *Smith v. Steele Motor Co., supra*, 22 P.2d at 1071; *First Nat'l Bank of Arizona v. Bennett Venture, Ltd.*, 130 Ariz. 562, 637 P.2d 1065 (1981). For example, they did not toll the running of the statute of limitations as to Mecham's liability. See *Brock v. Western Nat'l Indemnity Co.*, 132 Cal.App.2d 10, 281 P.2d 571, 575–76 (1955). Evidence in the record in fact points to Mecham's consent to the extensions. *E.g.*, Plaintiff's Exhibit Nos. 47, 50.

**17.** See Defendants' Trial Brief, at 1; Trial Transcript at 142–143.

that matter, to look to other collateral at all—where the principal debtor is in default and the guaranty instrument speaks in unconditional language. See *e.g., Sanger v. Flory*, 49 Idaho 177, 286 P. 610, 611 (1930); *Marshall-Wells Co. v. Kramlich*, 46 Idaho 355, 267 P. 611, 617 (1928). It also seems clear that "with respect to additional security for the payment of a debt, the creditor stands in the position of a trustee for the guarantor, and if a creditor surrenders or impairs collateral security without the consent of the guarantor, the latter is released to the extent of such negligent loss or impairment, or surrender." *Mechanics & Metals Nat'l Bank v. Pingree*, 40 Idaho 118, 232 P. 5 (1924); *Universal C. I. T. Credit Corp. v. Whitworth*, 77 Idaho 528, 296 P.2d 712, 716 (1956); *Industrial Inv. Corp. v. Rocca*, 100 Idaho 228, 596 P.2d 100, 106 (1979). Where a creditor, for example, dissipates collateral in a manner "commercially unreasonable" under Idaho Code [U.C.C.] § 28–9–504(3), a guarantor "will be discharged to the extent of the loss occasioned by the creditor." *Mack Financial Corp. v. Scott*, 100 Idaho 889, 606 P.2d 993, 998 (1980).

The negligent dissipation of collateral alleged herein was the failure of Chevron, or its assignor Bank of Salt Lake, see p. 1039, *supra*, to perfect a security interest in certain equipment owned by Great Basin. The equipment was collected as part of Great Basin's estate in bankruptcy and was disposed of for the benefit of Great Basin's creditors.[18]

The equipment in question was not "additional security" for the payment of Great Basin's open account as originally guaranteed by Mecham. There was no agreement that other collateral would be taken. It entered the picture only upon Chevron's retirement of an unrelated loan to Great Basin from the Bank of Salt Lake, and its acceptance of an assignment of the Bank's interests in collateral including the equipment. The transaction took place some months after Mecham's revocation of his guaranty. Additionally, Chevron had taken a security agreement listing the equipment as collateral. See Plaintiff's Exhibit No. 71. Chevron did not dispose of the collateral; in fact, there is no indication that Chevron ever took possession of the equipment.[19]

In effect, Mecham argues that Chevron *should have* taken possession for his benefit beginning with timely perfection of its security interests in the equipment.

Several courts have held that under general principles of suretyship there is an agreement implied in law imposing a duty on a creditor to protect a guarantor's right of subrogation[20] by perfecting the security interest in collateral and if the creditor fails to do so, the guarantor will be discharged to the extent of the loss occasioned thereby. See *Shaffer v. Davidson*, 445 P.2d 13, 15 (Wyo.1968); *D. W. Jaquays & Co. v. First Security Bank*, 101 Ariz. 301, 419 P.2d 85, 89 (1966); *Behlen Mfg. Co. v. First Nat'l Bank of Englewood*, 28 Colo.App. 300, 472 P.2d

---

**18.** Defendants' Exhibit No. HH appears to be a copy of a financing statement prepared pursuant to Article 9 of the U.C.C. for filing with the county clerk of Teton County, Idaho, by Chevron. See also Plaintiff's Exhibit No. 71. Entries on Exhibit HH range from the barely legible to the wholly illegible, rendering it impossible to determine the full import of that document. Its significance was not developed at trial. See Trial Transcript at 97, 108, 119, 210–211. If in fact Chevron had perfected its security interest in the equipment listed in HH, the record does not indicate when it was perfected, or how the equipment was retained by the trustee in bankruptcy. Compare Plaintiff's Exhibit No. 71 with *id.*, Nos. 73–75.

**19.** The case law dealing with creditor disposition of collateral in possession therefore seems

inapposite. Cf. Annot., 59 A.L.R.3d 369 (1974); Annot., 59 A.L.R.3d 401 (1974). In *Mack Financial Corp. v. Scott, supra*, the creditor held the collateral for two years, resulting in substantial depreciation at the time of sale. *Id.*, 606 P.2d at 997. See also *United States v. Willis*, 593 F.2d 247, 255 & n.10 (6th Cir. 1979).

**20.** See *e.g., Allen v. See*, 196 F.2d 608, 610 (10th Cir. 1952):

It is well settled that where one secondarily liable is called upon to make good on his obligation and pays the debt, he steps into the shoes of the former creditor. He becomes subrogated to all the rights of the creditor against the principal debtor, including the security given to secure the debt.

703 (1970); *American Bank of Commerce v. Covolo*, 88 N.M. 405, 540 P.2d 1294, 1296–1297 (1975).[21]

These cases, however, deal with collateral which was taken at the time that the parties formed the guaranty contracts, or collateral subsequently taken pursuant to the original agreement. They are often grounded upon a reading of § 3–606(1) of the Uniform Commercial Code, which states in part, "the holder discharges any party to the instrument to the extent that without such party's consent the holder . . . (b) unjustifiably impairs any collateral *for the instrument* given by or on behalf of the party or any party against whom he has a right of recourse." (Emphasis added.) See J. White & R. Summers, Uniform Commercial Code § 13–14, at 525–526 & nn. 129–132 (2d ed. 1980).

■ Mecham asks this Court to extend the principle to encompass collateral which was *not* taken at the time that he entered into the guaranty commitment—indeed, which was not taken until months after Great Basin's default and Mecham's revocation.

Nothing in the terms of the guaranty requires Chevron to take any collateral, whether taken at that time or subsequent to the guaranty contract. Nothing expressly requires perfection of security interests in collateral taken following default. The guaranty speaks of collateral not at all.[22] If Chevron had a duty to perfect its security interest, from what source does it derive?

This Court finds no agreement in the transactions or the expressed intent of the parties creating such a duty and cannot logically justify implying one as a matter of law, particularly on the facts presented here.[23] To hold otherwise would be to find that Mecham's guaranty, unconditional and absolute by its express terms, was in fact conditioned in part upon Chevron taking collateral following default by the principal debtor and applying it to Chevron's—and Mecham's—best advantage. This simply goes too far.

As the United States Court of Appeals for the Tenth Circuit concluded in a similar case,

> Considering the contract as a whole, the purpose for which it was given, together with all the surrounding circumstances existing at the time the guaranty was executed, we think it was the intention of the contracting parties that upon default the guarantor was unconditionally bound to pay the liabilities of the debtor as described in the guaranty instrument.

*Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp.*, 243 F.2d 196, 200 (10th Cir. 1957). This seems particularly sound where upon default, when Mecham's liability was fixed, Chevron possessed no security interest in any collateral, perfected or not.

The disposition and value, if any, of the Great Basin equipment is not to be considered in measuring Mecham's liability under his guaranty.

### G. Effect of Payments

■ To the extent that the original open account indebtedness [24] of Great Basin

---

**21.** There is contrary authority as well. See *First Citizens Bank & Trust Co. v. Larson*, 22 N.C.App. 371, 206 S.E.2d 775 (1974); *Nation Wide, Inc. v. Scullin*, 256 F.Supp. 929 (D.N.J. 1966), *affirmed* 377 F.2d 554 (3d Cir. 1967); *Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp.*, 243 F.2d 196 (10th Cir. 1957).

**22.** While nothing in the guaranty expressly waives the guarantor's subrogation rights to collateral, compare *American Bank of Commerce v. Covolo, supra*, why would a guaranty instrument discuss collateral in a transaction where there was none?

**23.** Mecham did not guaranty a note or other negotiable instrument. It is therefore questionable whether U.C.C. § 3–606(1)(b) and the cases applying it are relevant here at all. Furthermore, the material impairment of Mecham's subrogation rights as against Great Basin was the fact of Great Basin's bankruptcy, not Chevron's handling of its own security interests.

**24.** Here we speak of the principal amount of the open account, excluding interest and service charges not guaranteed by Mecham. See p. 1041, *supra*.

Grain Co. at the time of default has been reduced through payment or other satisfaction, Mecham as guarantor is thereby discharged. See *Industrial Inv. Corp. v. Rocca*, 100 Idaho 228, 596 P.2d 100, 104 (1979); *Durgin v. Kaplan*, 68 Cal.2d 81, 65 Cal.Rptr. 158, 436 P.2d 70 (1968); 38 C.J.S. Guaranty § 77 (1943). By March 1977, the principal amount due on the Great Basin open account indebtedness had been reduced to $17,452.11. See Plaintiff's Exhibit No. 69. Mecham is further entitled to discharge to the extent that the amount due has been reduced since March 1977, whether through payment by co-guarantor R. Kent Heileson, or otherwise.

### V. INTEREST

At pages 1041–1042, *supra*, this Court has found that Mecham's guaranty of the Great Basin open account did not comprehend payment of interest or service charges charged by Chevron. There remains the question of whether Chevron is entitled to interest at the legal, or judgment rates as it has accrued from the date of Great Basin's default.

■ This question, like others resolved herein, is to be governed by the applicable state law. See *Wyoming Construction Co. v. Western Casualty & Surety Co.*, 275 F.2d 97, 105 (10th Cir. 1960) cert. denied, 362 U.S. 976, 80 S.Ct. 1061, 4 L.Ed.2d 1011; *T & M Transp. Co. v. S. W. Shattuck Chemical Co.*, 158 F.2d 909, 910 (10th Cir. 1947); *North Drive-In Theatre Corp. v. Park-In Theatres, Inc.*, 248 F.2d 232, 237 (10th Cir. 1957); 1A Moore's Federal Practice ¶ 0.310 n.32 (2d ed. 1981). The applicable state law is the law of Idaho. See Part III, *supra.*

■ The Idaho case law indicates that pre-judgment interest is appropriate in actions arising on claims for sums certain or for amounts "mathematically and definitely ascertainable." *Rosecrans v. Intermountain Soap & Chemical Co.*, 100 Idaho 785, 605 P.2d 963, 966–967 (1980); *Farm Development Corp. v. Hernandez*, 93 Idaho 918, 478 P.2d 298, 300 (1970). Where there is conflict as to the amounts to be paid or received, i.e., when the claim is unliquidated,

a successful claimant is not entitled to an award of pre-judgment interest. *Farm Development Corp. v. Hernandez, supra; Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664, 668–669 (1971).

■ Mecham's liability in this action for breach of his personal contract of guaranty turns on fairly complex questions of interpretation of contract language and application of legal principles. Without resolution of these legal questions, the amount of liability was not "liquidated or capable of ascertainment by mere mathematical processes ...." *United States Fidelity & Guaranty Co. v. Clover Creek Cattle Co.*, 92 Idaho 889, 452 P.2d 993, 1004 (1969). An award of pre-judgment interest would therefore be inappropriate under Idaho law.

### VI. CONCLUSION

Counsel is directed to submit a proposed form of judgment, agreed to as to form by both parties, and consistent with this Court's determination that judgment should be granted in favor of the plaintiff Chevron Chemical Co. in the amount of $17,452.11 less any subsequent amounts paid or collected thereon, pursuant to Part IV G of this Opinion.

The proposed form of judgment shall be submitted within ten (10) days of the entry of this Opinion.